ELIZA G. FISHER, Respondent, v. THE COLUMBIA BUILD-ING AND LOAN ASSOCIATION *et al.*, Appellants.

Kansas City Court of Appeals, November 19, 1894.

1. **Subrogation**: SURETY. A surety, on paying the debt of his principal, is entitled to be subrogated to all securities, funds, liens, and equities which the creditor holds against the principal debtor or as a means of enforcing payment from him; and such subrogation is in the nature of a purchase by the surety from the creditor and operates in equity as an assignment of the debt and the securities to the surety.

2. ———: WHEN OPERATIVE: CREDITOR'S ASSIGNMENT. As between the creditor and the surety, the latter has no right of subrogation upon a partial payment. But when the creditor consents to the surety's subrogation *pro tanto,* to such subrogation the principal debtor and other creditors can make no objection. As to them, it is immaterial whether the surety has or has not completely satisfied the debt.

3. ———: LACHES: PROBATE ALLOWANCE. In this case, plaintiff can not be barred of her right to subrogation because of delay in presenting her claim to the probate court, since the creditor had already had the allowance probated.

4. ———: ESTOPPEL: FORMER JUDGMENT. Plaintiff is not barred from asserting her rights to subrogation in this suit because of the former suit in which she was adjudged to be a surety and not the principal debtor of the obligation in controversy.

*Appeal from the Boone Circuit Court.*—HON. JNO. A. HOCKADAY, Judge.

AFFIRMED.

*N. T. Gentry,* and *Turner, Hinton & Turner* for appellant.

(1) The bill or petition in this case failed to state facts sufficient to constitute a cause of action, and the

objection to the introduction of any proof should have been sustained. The right of a surety to be subrogated to any securities of the principal debtor, held by the creditor, does not come into existence until the creditor has been completely satisfied; and such a thing as subrogation *pro tanto* is unknown to equity doctrines. *Ames v. Huse*, 55 Mo. App. 422; *Cowgill v. Lindville*, 20 Mo. App. 138; *Matthews v. Switzler*, 46 Mo. 301; *Allison v. Southerlin*, 50 Mo. 274; *Ferguson v. Carson*, 86 Mo. 680; *Wade v. Cooper*, 2 Sim. Ch. 155; Dixon on Subrogation, p. 116; Sheldon on subrogation, secs. 87 and 127; Bispham, Equity [4 Ed.], 42; Adams' Equity (American notes), sec. 270, and foot note 1, p. 542; 1 Amer. Lead. Cas. Eq., p. 161; *Roberts v. Jeffries*, 80 Mo. 116. (2) The plaintiff is estopped by reason of the former litigation and decree to now assert that she was the surety for Dr. Fisher on the building and loan note. *Chouteau v. Gibson*, 76 Mo. 38.

*C. B. Sebastian* and *W. P. Coleman* for respondent.

(1) The trial court did not err in overruling appellant's objection to the introduction of any evidence in the case. The petition clearly stated a right and alleged that the only remedy was the relief asked. This clearly gave plaintiff a standing in the court where, when all other doors are closed to those who are being wronged, a listening ear will be given, and where full power to redress the wrong and protect the right exists. "That there is no right without a remedy," is a maxim as old as the law and a fundamental principle of the court of equity. Appellant did not file or stand upon a demurrer, but in his answer admits respondent's right, if the fact should be true by denying the facts and setting up a plea in bar, and

goes to trial upon issues joined. *Sayer v. Devore*, 99 Mo. 437. The facts being fully and fairly stated, show clearly that she had suffered wrong at the hands of the appellant and that she was entitled to a hearing in a court of equity to secure a redress of her wrong. I have carefully examined all the authorities cited in appellant's brief on this point, and none of them are applicable to the facts in this case. (2) Mrs. Fisher was not guilty of any laches. (3) The estoppel in this case is against the appellant and in favor of the respondent. There is ample evidence to sustain this finding and; this court, in accordance with its uniform rules, will defer to the finding of the chancellor who tried the case. *Woodsworth v. Tanner*, 94 Mo. 124; *Mathias v. O'Neill*, 94 Mo. 520. (4) The restraining order in the decree only went to the right of the creditor, the Columbia Building and Loan Association. It did not undertake to go to the right of the surety, Mrs. Fisher, nor could it do so, for the reason that there was no evidence before the court as to who had paid the $1,600 upon the allowed claim; and the judge who rendered the decree and understood fully what he decided so construed it, and this court will defer to his construction. *Taylor v. Cayce*, 97 Mo. 242.

GILL, J.—An understanding of this controversy may be had by a rehearsal of the facts set out in the statements of counsel: In September, 1888, Dr. M. M. Fisher borrowed of the Columbia Building and Loan Association $3,000, for which he executed his note signed by the plaintiff, Eliza Fisher, his wife, and O. P. Smith, her trustee, as security. The note was further secured by a deed of trust executed by Mrs. Fisher and her trustee, Smith, on her residence which was her sole and separate property. In February, 1891, Dr. Fisher died insolvent, and in April, 1891,

Dr. Paul Schweitzer was duly appointed administrator of his estate. In May, 1891, the Columbia Building and Loan Association presented this note of Dr. Fisher for allowance against his estate, and $2,350, the balance then due on the note was duly allowed in the fifth class of claims. There was also allowed against said estate, about $1,300 of other claims in the fifth class. All the claims in the fifth class, except the claim of the Columba Building and Loan Association, were purchased by defendant J. S. Branham. The plaintiff, Eliza G. Fisher, paid in July, 1891, $1,600, on this allowed claim, thinking at the time that the amount that the association would receive from Dr. Fisher's estate would pay off the balance. Thus the matter stood until May, 1892, when J. S. Branham, who then owned the other claims allowed against Dr. Fisher's estate, instituted a suit in the Boone circuit court to restrain the Building and Loan Association from receiving from the administrator of Dr. Fisher's estate anything on its allowed claims, until it first exhausted the security given by Mrs. Fisher, alleging that the allowed claim was the debt of Mrs. Fisher, and that M. M. Fisher was merely security therefor. Mrs. Fisher filed an answer denying that it was her debt and averring that it was the debt of her husband, Dr. M. M. Fisher, and that she was merely a surety for him.

On a hearing of this issue in June 1892, the court, in effect, held (adversely to the claim of Branham) that the debt was that of Dr. Fisher and not his wife; but, inasmuch as there appeared indorsed on the note a credit of $1,600, paid since the claim was allowed, the court entered its judgment restraining the Building and Loan Association from participating in the distribution of Dr. Fisher's estate, except on account of the

balance of its allowed claim, after deducting said $1,600.

On April 19, 1893, Mrs. Fisher instituted this present action, alleging her suretyship on the building and loan note, her payment of $1,600, and the insolvency of the Fisher estate, and asking to be subrogated *pro tanto* to the extent of her $1,600 payment to the rights of the Building and Loan Association against the Fisher estate. The administrator of Dr. Fisher answered by way of general denial; the Building and Loan Association answered, admitting the truth of the allegations of the petition, and J. S. Branham, the only active defendant in the case, answered, denying the suretyship of Mrs. Fisher, alleging that she was the real debtor and setting up a former adjudication.

On a trial in the circuit court the facts were found as alleged in plaintiff's petition, a judgment was entered as therein prayed, and from this defendant Branham has appealed.

I. From the foregoing statement, it will be seen that this is a suit by an alleged surety claiming the right to be subrogated *pro tanto* to the securities held by the creditor on account of a partial payment made by such surety on the principal debt. Or, to be more specific, the plaintiff, Mrs. Fisher, having paid $1,600 to the Building and Loan Association on account of its claim for a larger amount against Dr. Fisher for whom Mrs. Fisher was surety, seeks by this action to be subrogated to that extent to the rights of the association against the estate of said Dr. Fisher. In the disposition of this appeal, we shall assume the facts to be as they were found by the trial judge, since an examination of the record shows that such finding is well sustained by the evidence. He had the witnesses before him, and was in a better situation to pass upon

the credibility thereof and to settle all conflicts in the testimony, than we are.

The case then is this: The Building and Loan Association held a note (already proved up and allowed in the probate court) for about $2,400 against the estate of Dr. Fisher. The plaintiff, Mrs. Fisher, was surety on this note, and as such she paid to the association $1,600. She claims, by reason thereof, the right to stand in the shoes of the association and partake of the dividends from the estate in proportion to the amount she had so paid. The general principle is well understood, "that a surety, on paying the debt of his principal, is entitled to be subrogated to all securities, funds, liens, and equities, which the creditor holds against the principal debtor, or as a means of enforcing payment from him." Sheldon on Subrogation, sec. 86. The same learned author further says, "that it is in the nature of a purchase by the surety from the creditor. It operates in equity as an assignment of the debt and the securities to the surety." *Ib.* sec. 87.

But, in opposition to the right here, it is earnestly insisted that the plaintiff can not be subrogated to any of the rights or securities of the Building Association held by it against the Fisher estate for the reason that she has not paid the entire debt—that the right of subrogation does not exist until the surety shall have paid or satisfied the whole debt.

The principle here contended for is, in the abstract, correct. As between the creditor and surety, the latter has no right upon a partial payment of the debt to come in and share the securities with the creditor. The creditor has the right to insist upon retaining all rights and means of idemnity until the whole of his claim against the principal debtor shall have been satisfied. *Ames v. Huse,* 55 Mo. App. 422. But this is a matter

entirely between the surety and the creditor holding the securities; the principal debtor and other creditors can make no such objection to the right of subrogation. As to them it is immaterial whether the surety has or has not completely satisfied the debt. If the creditor holding the securities shall see proper to admit the surety, who has made a partial payment, to a proportionate share therein, it does no legal or equitable wrong to their interests and they can not be heard to object. *Gedye v. Matson*, 25 Beav. 310; *Motley v. Harris*, 1 Lea (Tenn.), 577; Sheldon on Subrogation, sec. 128; Harris on Subrogation, sec. 510. Now, it appears here that the creditor, Building and Loan Association, consents to this subrogation. It admits the right of this plaintiff to come in and share in the proceeds of the judgment against the principal debtor. Since, then, it consents, others have no right to object.

II. Plaintiff can not be barred of her rights because of any alleged delay in presenting her claim to the probate court for allowance. It was unnecessary to present the claim of the building association the second time. It had already been allowed; and, by virtue of plaintiff's subsequent payment of a portion thereof, she became entitled (with the assent of the association, who was the principal creditor) to partake of her proportionate share of the judgment against the Fisher estate.

III. Neither is the plaintiff barred of the assertion of her rights by the former suit and judgment in Branham *v.* Building Association *et al.* It is true that in that litigation, Mrs. Fisher did set up in her answer in reply to the allegations of the petition, that she was not principal debtor in the matter of the loan by the association, that she was only a surety for Dr. Fisher. This was indeed the principal, if not the sole, issue in that suit; and the holding of the court was, as to that

issue, in her favor. Said issue was not determined against her, as seems to be the position of defendant's counsel. If that judgment is to be invoked at all in this suit it would operate to estop defendant from alleging his main ground of defense, to wit, that the debt of the loan association was that of Mrs. Fisher and not that of her husband. I am at a loss to understand on what possible theory the judgment in that case can be used to bar the claim made here.

The judgment is for the right party and will be affirmed. All concur.